MOORE *v.* MECHANICAL PRODUCTS, INC.

1. CONTRACTS—SALES—COMMISSIONS—INSTRUCTIONS.

In salesman's action for commissions against party who had acquired some induction heating equipment, manufactured by plaintiff's employers, and desired to resell it, court's attempted correction of instruction that he had intended "express contract" where he had used "written contract" as "there was no written contract, but an express contract" *held,* not reversible error, in view of other parts of instructions given of contrary nature and failure of defendant's counsel to request amendatory statement upon opportunity offered.

2. SAME—SALES—COMMISSIONS—AUTHORITY OF PRESIDENT OF CORPORATION—EVIDENCE.

In salesman's action under express oral contract for commissions against corporation and its president for sale of induction heating equipment corporate defendant owned and desired to resell, it was not error to admit testimony of conversations plaintiff had with the president as to the promising of a commission, where there was other testimony from which the jury could have found that the other co-owner of the corporation knew of the transaction and left it to the president to handle.

3. TRIAL—CORPORATIONS—AUTHORITY OF PRESIDENT.

In salesman's action for commissions against corporation and its president, in which latter claimed lack of authority to make a contract with plaintiff, the mere asking of questions on cross-examination of the president implying he had in other cases endeavored to set up a false defense of want of authority did not constitute reversible error where the court ruled the questions improper.

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am. Jur., Appeal and Error, § 1127; 53 Am. Jur., Trial, §§ 513, 836–839.
[2] 13 Am. Jur., Corporations, §§ 889, 890, 897–900.

4. Appeal and Error—Contracts—Commissions—Verdicts—Evidence.

> Evidence *held,* sufficient to support jury's verdict against defendant corporation under express oral contract for commissions for resale of induction heating equipment.

Appeal from Jackson; Simpson (John), J. Submitted November 12, 1948. (Docket No. 37, Calendar No. 44,192.) Decided January 3, 1949.

Action by John A. Moore against Arthur D. Knapp and Mechanical Products Company, Incorporated, a Michigan corporation, to recover commission on sales. Verdict and judgment for plaintiff against corporate defendant. Defendant appeals. Affirmed.

*William V. Simpson* and *Phillip C. Kelly,* for plaintiff.

*John P. Riley* (*Bisbee, McKone, Badgley & McInally,* of counsel), for defendant.

Reid, J. Plaintiff brought this action against Arthur D. Knapp and Mechanical Products Company, Inc., a Michigan corporation, jointly and severally, to recover on an express oral contract for a commission which plaintiff claims is due him for the sale of certain heating equipment to representatives of the Ford Motor Company, on which plaintiff claims a commission of $550 each on 12 heating units or a total of $6,600. The jury returned a verdict in favor of plaintiff and against defendant corporation only for $6,600. From the judgment entered in pursuance of the verdict, defendant corporation appeals.

In 1947, plaintiff Moore was a salesman for the Budd Wheel Company of Detroit, manufacturers of induction heating equipment. His duties were to sell new equipment manufactured by Budd. Plaintiff

had called on the defendant Mechanical Products Company, Inc. (hereinafter referred to as defendant), endeavoring to sell them new equipment but defendant never bought any from the Budd Company. Prior to June, 1947, defendant had acquired some Budd induction equipment and some generators, which they bought from the war assets administration, installing part of the equipment in their plant for the general purpose of heating steel for forging purposes, and having changed their plans concerning the use of the equipment, they desired to sell that particular part of the equipment which was used in connection with the forging business.

Plaintiff offered testimony to show that Arthur D. Knapp, president of the Mechanical Products Company, Inc., in a conversation with plaintiff at the defendant's office, requested the plaintiff to find a buyer for this equipment. Further, the testimony of Mr. Knapp was that they (defendant corporation) were seeking to sell the equipment and had themselves contacted several prospective purchasers. Plaintiff claims and testified as a witness that it was no part of his duty with the Budd Wheel Company to sell equipment manufactured by the Budd Company which had been theretofore sold to customers and used by the customers and was later offered for sale by the customers as a used product. Plaintiff further testified that Mr. Knapp said that defendant would pay plaintiff "a nice commission." Plaintiff testified that after he had this conversation with Knapp and had received the assurance of "a nice commission," he got in contact with various industries in Detroit, Lansing and Toledo, and was unsuccessful at the price required, that he reported back to Knapp, president, and Mr. Kline, vice-president of defendant corporation, that the price was too high, and that thereupon the defendant corporation mailed to plaintiff their letter

dated May 13, 1947, quoting prices on the machinery that they had for sale, among other items being 12 single Budd heaters, "like new condition," $1,850 each. Plaintiff testified that it was later understood between himself and Knapp that the Budd heaters were to be listed or priced at $2,400 each and that the plaintiff, if he obtained a purchaser at $2,400 each for the 12, was to receive the difference between $1,850 and $2,400 or $550 each as his commission. Among other things, the letter of May 13, 1947, contained the sentence, "Should you send one of your customers to us, we will be very happy to give him all possible consideration," et cetera.

Plaintiff claims that upon receiving the assurance of the commission of $550 on each of the heaters, he got in contact with directors of the Ford Motor Company and got them interested in the purchase and finally obtained for the defendant the sale of the 12 heater units at $2,400 each. Plaintiff further claims that in conversations subsequent to the sale, Mr. Knapp admitted that the amount of $6,600 was due but told plaintiff to get the check from Mr. Kline, and then Mr. Kline failed to issue the check.

Both defendants deny that there was ever any promise to give plaintiff a commission for the sale of the machinery.

Some discussion occurred during the trial of the case concerning the nature of plaintiff's claim, as to whether it was express or implied. At no time did plaintiff claim a written contract. In the latter part of his charge to the jury, after some discussion had occurred concerning the expression, "written contract," used in the charge by the court (evidently inadvertently), the court said,

"Where I said 'written contract,' I misspoke myself. It should have been 'express contract.' As I understood throughout the case there was no written

contract, but an express contract, one that was understood orally between the parties."

Defendant claims that there being a dispute in the case whether there was any contract whatever, and particularly a dispute over the plaintiff's claim that there was an express (oral) contract, the court was in error in using the language that he did, to the effect that he had understood through the case there was an express contract. Several times (to the number of about 15 times) during his charge the court had stated to the jury that they (the jury) must find that there was a contract or the plaintiff could not recover. The question remaining for us to decide is whether the erroneous statement by the court shall be considered reversible error.

Immediately before his attempt to make the correction by eliminating the word "written," the court had just charged the jury, "Of course, if you find there was no express contract or no implied contract, then your verdict should be no cause of action." Immediately following the court's erroneous statement, the court and counsel had a discussion which was not made a part of the record, at the conclusion of which the following occurred:

"*The Court:* Now, if there are no further suggestions,—

"*Mr. Badgley* (attorney for defendants) (interposing): No other than those that I have filed, your Honor."

We conclude that Mr. Badgley was satisfied to permit the case to be submitted to the jury without the court amending his statement to say that it was *claimed* by *plaintiff* (not that he [the court] understood) that there was an express contract, and we further conclude that the court did not intend to say that in his opinion an express contract had been convincingly proven. We do not doubt that the

court did not intend to express his opinion on the dispute as to the existence of an express agreement, and further we are satisfied that counsel, who had an excellent opportunity to request an amendatory statement by the court at the time, must have considered the court was not intending to make such erroneous expression of an opinion on his part. Counsel made no request that the court change that part of his charge. Hence we consider the jury also understood the situation, especially in view of the several contrary statements in the charge.

Mr. Knapp denies that he had authority as president of the corporation to bind it by the express agreement claimed by plaintiff. The corporation was entirely owned by Mr. Knapp and Mr. Kline, except that one share had been given or sold to a Mr. Halsey some time in June, 1947. Defendant claims it was error for the court to permit testimony on the part of plaintiff to be given respecting conversations between plaintiff and Mr. Knapp, the president of the corporation, as to the promising of commission, for want of sufficient authority on the part of Mr. Knapp to bind the corporation having first been shown. The jury could have found from the testimony that the affairs of the corporation were being so conducted that Mr. Kline had knowledge of its important affairs in general, and in particular, of the details as to offering the property in question for sale. We are convinced that the record is sufficient for the jury to draw the inference that the actions of Mr. Knapp were known to Mr. Kline and that Mr. Halsey had a nominal interest only; that Mr. Knapp and Mr. Kline were the corporation to all intents and purposes, and that Mr. Kline having knowledge of the whole situation and leaving it in the hands of Mr. Knapp to handle these matters, it must be considered that the actions of Knapp were practically the actions of the corporation. The ob-

jection of the defendants to the admission of testimony of conversations of plaintiff with Mr. Knapp was properly overruled by the trial court.

Plaintiff's attorney in cross-examination of Mr. Knapp asked of Mr. Knapp certain questions implying that he had in other cases endeavored to set up a false defense of want of authority. The court on motion of defendants ruled the questions improper, and we find no error in that particular.

Other matters claimed by the defendant to be error on the part of the court have been examined and we find no necessity of discussing them. There was sufficient testimony to support the jury's verdict, which was against defendant corporation only. The verdict is not against the clear preponderance of the evidence. Judgment appealed from is affirmed. Costs to plaintiff.

Sharpe, C. J., and Bushnell, Boyles, North, Dethmers, Butzel, and Carr, JJ., concurred.